UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOVSES KVRYAN,<br>Petitioner,<br>v.<br>J. JOHNSON, et al.,<br>Respondents. | Case No. 5:26-cv-05610-KES<br><br>ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY |

## I. INTRODUCTION

Movses Kvryan ("Petitioner") filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). This is his second habeas petition Petitioner has filed in this Court. See Kvryan v. Semaia, No. 5:26-cv-03365-SB-KES (C.D. Cal.) ("Kvryan I"). Respondents have answered the current Petition ("Answer" at Dkt. 9), and the parties have consented to the jurisdiction of the Magistrate Judge (Dkt. 11).

The Petition is granted because Respondents have not demonstrated that

Petitioner's removal is reasonably foreseeable under Zadvydas v. Davis, 533 U.S. 678 (2001). Respondents shall immediately release Petitioner from custody and are enjoined from re-detaining him without a showing of changed circumstances, as further ordered below.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Petitioner's Removal Order (2010) and Release from ICE Custody (2011-2025).

Petitioner was born in Soviet Armenia in 1974 and entered the U.S. with his mother's USSR passport at the age of six. (Pet. at 3.) In 1981, he became a legal permanent resident. Kvryan I, Dkt. 1 at 30 (notice to appear dated Dec. 10, 2009).

In 1997, Petitioner was convicted of attempted murder and sentenced to 15 years in California state prison. Kvryan I, Dkt. 1 at 6; (Answer Ex. B / Dkt. 9-3 (DHS Form I-213, Record of Deportable/ Inadmissible Alien)). After he finished serving his sentence, he was placed in removal proceedings. Kvryan I, Dkt. 1 at 30 (notice to appear).

On April 23, 2010, an immigration judge ("IJ") ordered him removed to Armenia based on the attempted murder conviction. Kvryan I, Dkt. 9-3 (IJ's removal order); Id., Dkt. 1 at 30 (the NTA, alleging removability based on the attempted murder conviction). Petitioner did not appeal the removal order. Kvryan I, Dkt. 9-3 (removal order, indicating there was on appeal).

However, neither Armenia nor Russia would recognize Petitioner as their citizen. (Pet. at 3.) In 2011, ICE released Petitioner from custody on an order of supervision ("OSUP") because they were unable obtain travel documents for him. (Pet. at 3; Answer Ex. B / Dkt. 9-3 (DHS Form I-213).)

Petitioner remained in the U.S. for the next 14 years. He "lived under the care of his mother while managing a severe diagnosis of schizophrenia." Kvryan I, Dkt. 1 at 6 (prior habeas petition). There is no evidence that he has been arrested, committed any new crimes, or violated the terms of his OSUP. (See Answer Ex. B

/ Dkt. 9-3 (DHS Form I-213, listing criminal history).)

**B. Petitioner's Re-Detention by ICE (December 2025) and Motion to Reopen His Immigration Case (January 2026).**

On December 19, 2025, ICE re-detained Petitioner at a routine check-in. (Pet. at 3; Answer Ex. B / Dkt. 9-3 (DHS Form I-213).) ICE did not allege that Petitioner had violated any of the terms of his OSUP. Rather, ICE alleged that he was "subject to an administratively final order of removal" and that his case was "under current review by Armenia for the issuance of a travel document." Kvryan I, Dkt. 9-6 (notice of revocation of release).

On January 16, 2026, Petitioner moved the immigration court to reopen his removal proceedings "based on his worsened schizophrenia and deteriorated country conditions regarding psychiatric care in Armenia." Kvryan I, Dkt. 1 at 7 (prior habeas petition). The IJ denied the motion on March 2, 2026. Id. Petitioner moved for reconsideration with new evidence, including evidence that he had moved to vacate his attempted murder conviction in state court under California Penal Code § 1473.7. Id. The IJ denied the motion for reconsideration and Petitioner's request for a stay of removal on March 26, 2026. Id.

**C. Prior Habeas Case.**

On June 17, 2026, after Petitioner had been in ICE custody for about 6 months, he filed a counseled habeas petition in this Court and applied for a temporary restraining order ("TRO"). Kvryan I, Dkt. 1, 3. On June 30, 2026, after reviewing Respondents' answer and Petitioner's reply, the Court denied the TRO and dismissed the petition. Id., Dkt. 11. First, the Court found, "Petitioner's Zadvydas claim fails at this time," because "others born in the Soviet Union have been successfully removed to Armenia," and "Armenia is currently reviewing Petitioner's application" for travel documents. Id. at 3. Second, the Court found that Petitioner had not demonstrated that revocation of his OSUP was improper under 8 C.F.R. § 241.13(i)(2), because the government's evidence showed that he

was provided with written notice and an interview at the time of revocation. Id. at 3-4. Third, the Court found that Petitioner's "claims challenging third-country removal and punitive banishment" were not "ripe" because there were "no facts suggesting that Petitioner will be removed to a third country." Id. at 4.

**D. Immigration Court Proceedings (August 2026).**

Petitioner appealed the IJ's March 2026 denial of his motion to reopen his removal proceedings to the Board of Immigration Appeals ("BIA"). (Answer Ex. A / Dkt. 9-2 at 4.) On August 11, 2026, the BIA remanded the case for further proceedings before the IJ, finding that the IJ's form denial order was "inadequate for [the BIA's] review" and instructing the IJ to issue "a full decision that provides a basis for review." (Id. at 4-5.) Thus, Petitioner's motion to reopen remains pending.

**E. Current Habeas Proceedings.**

Petitioner filed the present, pro se Petition on September 23, 2026, three months after the denial of his prior petition. (Dkt. 1.) Petitioner argues that he "must be released because there is no good reason to believe he will be deported to Armenia or Russia in the reasonably foreseeable future" under Zadvydas v. Davis, 533 U.S. 678 (2001). (Pet. at 4.) Petitioner also "request[s] … evidence from DHS" as to specific issues, e.g., whether Armenia has affirmatively agreed to accept Petitioner and whether DHS has obtained a travel document. (Pet. at 9-10.)

Respondents answered the Petition on September 30, 2026. (Dkt. 9.) They argue, "Petitioner proceeds on the factual premise that he is subject to a final order of removal. But his removal order is no longer administratively final," due to the BIA's remand regarding Petitioner's motion to reopen. (Id. at 2.) They argue, "For this reason, the posture of Petitioner's detention is no longer post-removal period detention—meaning Zadvydas concepts are not currently at issue." (Id. at 2.) Respondents state, "Petitioner's recourse is a bond hearing pursuant to Rodriguez Vasquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026)," and argue he "is

not entitled to his preferred remedy of release due to his extensive criminal history." (Id. at 3.)

Petitioner remains in ICE detention in Adelanto, California. See ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 095-652-545 (Armenia), last accessed Oct. 1, 2026). He has now been detained for almost 10 months. There is no evidence that he has ever had a bond hearing in immigration court.

## III. LEGAL STANDARDS

### A. Detention During Removal Proceedings.

8 U.S.C. § 1226(a) "authorizes the federal government to detain aliens pending the completion of their removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1193 (9th Cir. 2022). Detention is not mandatory; the government may either detain the noncitizen or release them on bond or conditional parole. Id. at 1196 (citing 8 U.S.C. § 1226(a)(1)-(2)).

### B. Detention During Removal Period.

"When a final order of removal has been entered against an alien, the Government must facilitate that alien's removal within a 90-day 'removal period.'" Thai v. Ashcroft, 366 F.3d 790, 793 (9th Cir. 2004) (citation omitted); 8 U.S.C. § 1231(a)(1)(A). During the removal period, detention is mandatory. 8 U.S.C. § 1231(a)(2); see also Khotesouvan v. Morones, 386 F.3d 1298, 1301 (9th Cir. 2004) (upholding constitutionality of mandatory detention during the removal period, distinguishing Zadvydas).

The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final;

(ii) If the removal order is judicially reviewed and if the court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from

detention or confinement.

8 U.S.C. § 1231(a)(1)(B). DHS regulations state that an order of removal becomes final:

(a) Upon dismissal of an appeal by the [BIA];

(b) Upon waiver of appeal by the [noncitizen];

(c) Upon expiration of the time allotted for an appeal if the [noncitizen] does not file an appeal within that time;

(d) If certified to the [BIA] or Attorney General, upon the date of the subsequent decision ordering removal;

(e) If an [IJ] orders [a noncitizen] in the [noncitizen's] absence, immediately upon entry of such order; or

(f) If an [IJ] issues an alternate order of removal in connection with a grant of voluntary departure, upon overstay of the voluntary departure period, or upon the failure to post a required voluntary departure bond within 5 business days. …

8 C.F.R. § 1241.1.

**C. Detention During Post-Removal Period.**

Where removal cannot be accomplished within the 90-day removal period, continued detention is authorized by 8 U.S.C. § 1231(a)(6) but is not mandatory. Johnson v. Arteaga-Martinez, 596 U.S. 573, 578 (2022). "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)); see also 8 CFR § 241.4 (setting out procedures DHS must follow to impose continued detention). "Continued detention under this provision creates the 'post-removal period.'" Johnson v. Guzman Chavez, 594 U.S. 523, 528-29 (2021).

**D. Limitations Imposed by *Zadvydas* and Federal Regulations.**

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court held that § 1231(a)(6) does not authorize the government to detain a noncitizen awaiting removal "indefinitely" beyond the statutory 90-day removal period. 533 U.S. at 689. Rather, the Supreme Court construed the statute to contain an implicit "reasonable time" limitation. Id. at 682. The Court held that "the statute, read in light of the Constitution's demands, limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Id. at 682, 689. The Court determined that six months was a presumptively reasonable period of detention. Id. at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. "For detention to remain reasonable, as the period or prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

Following Zadvydas, DHS enacted 8 C.F.R. § 241.13 to comply with that ruling. That regulation provides:

> This section establishes special review procedures for those [noncitizens] who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the [noncitizen] has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future.

8 C.F.R. § 241.13(a). The regulation states that the noncitizen may be released on an OSUP if DHS finds that their "removal is not significantly likely in the reasonably foreseeable future…." 8 C.F.R. § 241.13(h)(1).

Once they have been released on an OSUP, that OSUP may be revoked only if they violate the conditions of their release, see 8 C.F.R. § 241.13(i)(1), or if "on account of *changed circumstances*, [DHS] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future," 8 C.F.R. § 241.13(i)(2) (emphasis added). Thus, the regulation "requir[es] (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." Nguyen v. Hyde, 788 F. Supp. 3d 144, 150 (D. Mass. 2025) (quoting Kong v. United States, 62 F.4th 608, 619-20 (1st Cir. 2023)).

Many district courts have held that, once the noncitizen is released on an OSUP, based on a finding that they are unlikely to be removed, then when DHS seeks to revoke that OSUP, the *government* rather than the noncitizen bears the burden of demonstrating that "changed circumstances" now render the noncitizen's removal significant likely in the reasonably foreseeable future. See, e.g., Yan-Ling X. v. Lyons, No. 25-cv-01412, 2025 WL 3123793, at *3, 2025 U.S. Dist. LEXIS 220277, at *8 (E.D. Cal. Nov. 7, 2025); Nazarian v. Noem, No. 25-cv-02694-KK-ADS, 2025 WL 3236209, at *5, 2025 U.S. Dist. LEXIS 229051, at *10-11 (C.D. Cal. Nov. 3, 2025); El Abed v. Noem, No. 25-cv-02361-FWS-JDE, 2025 WL 3691910, at *4, 2025 U.S. Dist. LEXIS 263943, at *11-12 (C.D. Cal. Oct. 28, 2025). This is both logical and consistent with Zadvydas. If a noncitizen was previously released on an OSUP under 8 C.F.R. § 241.13, then DHS had some reason to believe, at that time, that their removal was not significantly likely in the reasonably foreseeable future. Those same reasons—as well as the passage of some amount of time while the noncitizen was out on an OSUP—generally would also serve to rebut the initial presumption in Zadvydas when the government seeks to revoke the OSUP. At that point, the burden falls on DHS, both under Zadvydas and 8 C.F.R. § 241.13(i)(2), to show that something has changed that now renders removal likely.

## IV. DISCUSSION

### A. Petitioner's Current Detention is Governed by § 1231(a)(6), not § 1226(a).

Respondents argue that Zadvydas is inapplicable here because, after the BIA remanded Petitioner's motion to reopen his removal proceedings to the IJ, Respondents' authority to detain Petitioner reverted to § 1226(a) rather than § 1231(a)(6). (See Answer at 2.) They argue, "Petitioner is back in removal proceedings, which remain pending." (Id.)

Notably, the BIA did not find that Petitioner's motion to reopen should be *granted*. The BIA simply remanded so the IJ could better explain the reasons why that motion had been denied. Respondents cite no authority for the proposition that a *pending* motion to reopen renders a removal order non-final within the meaning of 8 U.S.C. § 1231(a)(1)(B) and 8 C.F.R. § 1241.1. The opposite appears to be true, as one district court has explained in rejecting a similar interpretation:

> Petitioner argues that the fact that he filed a motion to reopen proceedings before the IJ, and the appeal of the denial of that motion is still pending before the BIA, renders his removal order not yet administratively final. … This position, however, is at odds with governing law. The Court of Appeals has held that a motion to reopen does not operate as a 'review' of the IJ's decision within the meaning of § 1101(47)(B), which would render the decision not final. Rather, a motion to reopen acts as a "collateral review of [a] final order[ ] of removal," Diouf v. Napolitano, 634 F.3d 1081, 1086 (9th Cir. 2011), i.e., the filing of it does not render the removal order not final. See id.; see, e.g., Viengkhone S. v. Albarran, 817 F. Supp. 3d 901, 911 (E.D. Cal. 2025); Escobar v. Lynch, No. CV 16-00683 LEK-RLP, 2017 WL 2369374, at *4 (D. Haw. May 31, 2017). This understanding accords with the regulations governing motions to

> reopen, which provide that such a motion "must be filed no later than 90 days after the date on which the *final administrative decision* was rendered in the proceeding sought to be reopened," 8 C.F.R. § 1003.2(c) (italics added), indicating by implication that the removal proceeding is administratively final at the time a motion to reopen is filed. Thus, the weight of authority commands a finding that the finality of petitioner's removal order was not altered by virtue of there being a pending appeal from the motion to reopen in the BIA.

Quizhpe Macas v. Warden, California City Det. Ctr., No. 26-cv-03046, 2026 WL 1506814, at *2 (E.D. Cal. May 29, 2026), R&R adopted, 2026 WL 1852306 (E.D. Cal. June 26, 2026).

Accordingly, Petitioner's removal order remains final, which means his detention is governed by § 1231(a)(6), not by § 1226(a).

### B. Petitioner is Entitled to Relief on His *Zadvydas* Claim.

Petitioner has now been detained for 10 months, well over the 6-month presumptively reasonable time period established in Zadvydas. Moreover, Petitioner was previously released on an OSUP because DHS was unable to remove him. The burden is therefore on Respondents to show that Petitioner's removal is now reasonably foreseeable.

In late June 2026, in response to Petitioner's prior habeas petition, DHS represented to the Court that it had applied for travel documents from Armenia and was awaiting a response. Three more months have now passed, and there is no evidence that Armenia has granted travel documents for Petitioner or that they are likely to do so. Respondents' Answer fails to provide any evidence on this point at all. Accordingly, Petitioner is entitled to relief on his Zadvydas claim.

Respondents argue that the appropriate relief is a bond hearing, rather than release from custody, citing the Ninth Circuit's recent decision in Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026). (Answer at 3.) That case

concerned whether certain noncitizens were properly deemed "applicants for admission," making them ineligible for a bond hearing under 8 U.S.C. § 1225(b)(2)(A). That case has little bearing here, as there is no evidence that Petitioner has ever been deemed an applicant for admission.

Respondents also cite Zhang v. Warden, No. 26-cv-3022-AS, 2026 WL 1709213 (C.D. Cal. June 12, 2026) for the proposition that a bond hearing, rather than release, is the appropriate remedy. However, that case did not involve a Zadvydas claim. The petitioner in that case argued that he should be released from custody because ICE had violated his procedural due process rights by failing to provide him with a pre-deprivation hearing before arresting him. Zhang, 2026 WL 1709213 at *1. The court found that relief inappropriate, noting that ICE officers had "reasonably determined that … alleged criminal activity was a violation of the terms of Petitioner's release which warranted his arrest [by ICE]." Id. at *2. The court instead ordered the respondents to provide the petitioner with a bond hearing. Id.

Here, in contrast, Petitioner is not arguing that the procedures used to arrest him violated his procedural due process rights. He is arguing that his continued detention serves no proper purpose, because his removal from the U.S. is not reasonably foreseeable. The only way to remedy the wrong alleged is to release Petitioner from custody and end the wrongful detention. Additionally, given the history of Petitioner's two habeas cases and the length of Petitioner's detention, the Court will also award prospective injunctive relief preventing his re-detention unless certain conditions are met.

//

//

//

//

//

## V. CONCLUSION

IT IS THEREFORE ORDERED that:

1. The Petition is granted.
2. Respondents shall **immediately release** Movses Kvryan (A# 023-408-508) from custody.
3. Within **three (3) days** of the date of this order, Respondents shall file a Notice of Release confirming Petitioner has been released from custody.
4. Respondents shall not re-detain Petitioner unless (a) they have clear and convincing evidence that he violated one of the terms of his release, or (b) DHS has obtained travel documents for Petitioner from Armenia or a third country in a manner consistent with due process.

DATED: October 1, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE